UNITED STATES DISTRICT

COURT DISTRICT OF OREGON

EUGENE DIVISION

JOSHUA F.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:24-cv-01767-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Joshua F. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**STANDARD OF REVIEW**

    The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 16, 2012, through his date last insured, December 31, 2024. At step two, the ALJ determined plaintiff suffered from the following severe impairments: anxiety, panic disorder with agoraphobia, unspecified social phobia, posttraumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). Tr. 19.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff has the capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [H]e can tolerate no exposure to moving mechanical parts and high exposed places; he cannot perform commercial driving; he is able to understand, remember, and carry out simple routine instructions; he is capable of occasional interaction with supervisors and coworkers; he can never interact with the public; he can tolerate occasional changes in a routine work setting; and he can tolerate no teamwork or group tasks.

Tr. 21.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 28. However, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including janitor, automobile detailer, and hand packager. Tr. 29. Thus, the ALJ concluded plaintiff was not disabled. Tr. 30.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly discounting his symptom testimony, (2) rejecting the medical opinion of Jenny Tausch, APRN, and (3) rejecting the lay witness testimony of his mother.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

3 – OPINION AND ORDER

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

4 – OPINION AND ORDER

The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, in evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. Thus, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

At his hearing, plaintiff testified that his anxiety and panic attacks prevent him from working. Plaintiff described his typical daily activities as waking up, showering, making coffee, spending a lot of time on his computer, cleaning his house, and then going to bed between 8:30pm and 9:00pm. Tr. 51. Plaintiff considers his quality of life to be low, and testified that he does not want to "be stuck like this forever." Tr. 50-51. He noted that he is financially dependent on his father. Tr. 53. Plaintiff stated that panic attacks have caused him to miss multiple job interviews, and he has also lost many jobs due to his anxiety and panic attack symptoms. Tr. 48, 51.

When plaintiff experiences a panic attack, his heart beats "really hard" and he experiences tunnel vision. Tr. 46. He becomes disoriented and sometimes will hyperventilate. Tr. 46. Plaintiff's panic attacks cause him to become "overwhelmed" and he has difficulty focusing and functioning. Tr. 46. The panic attacks can last 30 to 60 minutes, and plaintiff has at least one

panic attack a day. Tr. 46. When plaintiff has a panic attack, he tries to calm himself by drinking water, sitting in front of a fan, playing music quietly, and trying to focus on one thing. Tr. 48. If these interventions do not work, plaintiff takes medication to control his symptoms. Tr. 48. Plaintiff explained that "going outside" is a "really big trigger," and he has been working with a therapist to identify additional triggers in order to "push himself" to leave the house more. Tr. 47, 50. Plaintiff's therapist has worked with him to try to leave his house at least once a day, even if it is just to walk down his driveway and back, but plaintiff noted that this is "very difficult." Tr. 50.

The ALJ concluded that plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record." Tr. 23. The ALJ noted that plaintiff is "independent" in his daily activities, including personal care and maintaining close relationships with family and a few friends. Tr. 22. The ALJ also observed there was "some improvement in his symptoms" with treatment. Tr. 24-27.

A.     **Activities of Daily Living**

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

6 – OPINION AND ORDER

However, a claimant need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick*, 157 F.3d at 722 (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ observed that plaintiff is "independent with personal care without the need for reminders," and "described spending time daily watching TV, using the computer, taking a shower, doing some cleaning, sometimes going outside, and helping attend to his mother's dog." Tr. 22. The ALJ also noted that plaintiff prepares food as needed,[2] does laundry, is able to drive[3] and go out alone, shops via computer, and is generally able to handle money. *Id.* The ALJ further observed that, although plaintiff noted he has difficulty socializing, . . . he keeps in contact with others via his phone and sometimes hangs out with friends or family." *Id.* None of the activities listed by the ALJ are inconsistent with plaintiff's testimony that going outside triggers panic attacks. In fact, almost all of these activities can be done within the confines of plaintiff's home. Moreover, plaintiff described that he suffers panic attacks even when he is at home, and that he will be in a "full panic attack" for 30 minutes to an hour. Tr. 47. When he is at home, it is hard for him to stay still, he is "all over the place" and "up" and "down," and sometimes gets so disorientated that he runs "into walls." Tr. 49.

The ALJ took issue with a single chart note from September 2023, where plaintiff's new provider listed "[e]xercise is through riding his dirt bike" on intake paperwork. Tr. 23, citing Tr.

---

[2] Plaintiff's mother described that plaintiff makes sandwiches and quick frozen. Tr. 298. The length of time it takes for him to prepare food depends on whether he is having a panic attack because his functioning is very low during a panic attack. *Id.*

[3] The record reflects that driving causes plaintiff anxiety, Tr. 472, and he cannot drive alone because a panic attack will cause erratic behavior that can lead to an accident. Tr. 79, 299.

7 – OPINION AND ORDER

574. The ALJ concluded this treatment note "called into question" plaintiff's hearing testimony that he only rode his dirt bike in his parents' yard while he was living with them. Tr. 23. According to the ALJ, this "indicate[d] [Plaintiff] leaves his house more than he alleges." Tr. 27. To be clear, this was a single treatment note; there is no other mention in the record about plaintiff riding a dirt bike. A single treatment note is insufficient to impeach plaintiff's testimony where the record otherwise contains ample evidence supporting plaintiff's claimed difficulty leaving his house. *See Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020) (finding a single treatment note indicating improvement was not substantial evidence where medical records consistently documented the plaintiff's anxiety and panic attacks). The ALJ thus failed to properly rely on plaintiff's daily activities in discounting his symptom testimony.

      **B.**      **Conflict with Objective Medical Evidence**

The ALJ found that "objective medical evidence does not support the extent of the claimant's alleged limitations." Tr. 24. But the ALJ pointed to no specific objective evidence to support this conclusion. In other sections of the decision, the ALJ cited mental examinations describing plaintiff as neatly groomed, with normal speech, intact memory, and good insight and judgment. *See, e.g.*, Tr. 27, citing Tr. 566-68. However, none of those observations are inconsistent with plaintiff's testimony regarding his anxiety and panic attacks. Plaintiff's medical records show that he was anxious and nervous and frequently paced during appointments, including telehealth visits, which actually supports his testimony. *See, e.g.*, Tr. 393, 419, 421, 429, 536, 575, 583, 585, 594, 619, 620, 622. Plaintiff's records also show he had difficulty leaving his house without a family member present, and his mother or father frequently accompanied him to in-office visits. *See, e.g.*, Tr. 78, 393, 394, 399, 404, 411, 413, 415, 417, 419, 421, 425. The visits where plaintiff was not accompanied by a family member were

8 – OPINION AND ORDER

generally telehealth visits, or visits where plaintiff's provider agreed to meet outside for therapy sessions.[4] *See, e.g.*, Tr. 378, 383, 423, 425, 431, 433, 455, 472, 484, 629, 534, 591, 612. Thus, the ALJ's decision to discount plaintiff's subjective symptom testimony on this basis is not supported by substantial evidence.

The ALJ also observed that "with treatment compliance the claimant has obtained some improvement in his symptoms." Tr. 24. The ALJ stated "[i]t is notable that the claimant has been able to use therapy techniques and medication to relieve or control his symptoms[.]" *Id.* "Impairments that can be 'controlled effectively' by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits." *Dennis R. v. Comm'r of Soc. Sec.*, No. C20-5836 RAJ, 2021 WL 2328374, at *2 (W.D. Wash. June 8, 2021) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). However, improvement with treatment is "not a clear and convincing reason to discount" a claimant's testimony" where "records note[d] some improvement, but none indicate[d] [p]laintiff's symptoms were fully relieved or otherwise contradict[ed] [p]laintiff's testimony." *Dennis R.*, 2021 WL 2328374, at *2. "That a person who suffers from severe [symptoms] makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Here, even the ALJ noted that "the record shows that the claimant reported improvement, albeit not full

---

[4] The ALJ also mischaracterized the record, stating that plaintiff attended in-office appointments alone in May 2022. Tr. 25. The record shows plaintiff attended three appointments in May 2022, only one of which was an in-office appointment. Treatment notes from that in-office appointment are unclear as to whether Plaintiff went to this appointment alone. *See* Tr. 428-30. The remaining two appointments in May 2022 were telehealth visits. Tr. 431-32, 433-34. In fact, the entire record contains only four appointments where no accommodation was made for plaintiff's anxiety—e.g., parental companion, telehealth visit, or outside meeting. Tr. 376, 406-10, 428-30, 573-76.

9 – OPINION AND ORDER

relief, of his symptoms with medication adjustments." Tr. 25; *see also* Tr. 26 (noting plaintiff "also reported improvement in anxiety and panic with propranolol, but not enough that he thought he would be able to work"). Thus, to the extent the ALJ relied on plaintiff's improvement with treatment to discount his subjective symptom testimony, this reason is not supported by substantial evidence.

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ erred in evaluating the medical opinion of Jenny Tausch, APRN. When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by

10 – OPINION AND ORDER

explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

In September of 2022, Tausch prepared a medical opinion form in support of plaintiff's disability claim. Tr. 440-46. Tausch began treating plaintiff in February of 2022, and had been seeing him "at least twice a month" for medication management and psychotherapy. Tr. 440. Tausch explained that plaintiff experienced "severe anxiety, fear of leaving home, fear of driving, fear of talking to people, panic attacks, isolation, and struggles with daily living." Tr. 441. She assessed plaintiff with marked limitations in his ability to understand, remember, and carry out simple instructions. Tr. 443. Tausch opined that Plaintiff has extreme limitations in his ability to make simple work decisions; understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to usually work situations and changes in a routine work setting. Tr. 444. Tausch concluded that plaintiff would miss work more than four days a month due to his medical impairments. Tr. 446.

The ALJ found Tausch's opinion unpersuasive. Tr. 25. To start, the ALJ pointed out that Tausch's opinion was based on a "five-month treatment history." Tr. 25. The length of the treatment relationship between a provider and a claimant is a factor the ALJ may consider in evaluating the medical source's longitudinal understanding of a claimant's impairments. 20 C.F.R. §§ 404.1520c(c)(3)(i), 416.920c(c)(3)(i). However, there are other factors to be considered, including the frequency of examinations. *Id.* Here, Tausch met with plaintiff 16 times before completing the medical opinion form. *See* Tr. 417-18, 419-20, 421-22, 423-24, 425-27, 428-30, 431-32, 433-34, 435-36, 437-38, 455-57, 458-60, 461-63, 464-65, 466-68, 469-70. This is not an insignificant number of treatment sessions. In fact, ALJs frequently rely on just a single consultative medical examination as competent medical opinion evidence.

12 – OPINION AND ORDER

The ALJ further concluded that Tausch's opinion was not supported by her own clinical observations, including that plaintiff was well-groomed, cooperative, and had an intact memory, clear and even-toned speech, normal behavior, logical and linear thought process, good insight and judgment, average intelligence, and no deficits in attention and concentration. Tr. 25. An ALJ may reject a medical opinion where it is inconsistent with the medical source's own treatment notes. *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024) (holding a medical opinion is properly found unpersuasive where the provider assesses limitations that are "contradicted [by] his own treatment records"). However, where mental health is concerned, the context under which the medical examinations are conducted matters. *See, e.g., Garrison*, 759 F.3d at 1017 (noting that mental health findings taken in the context of a therapeutic setting do not always mean that a claimant can function effectively in the workplace). Tausch's examination notes were made in a therapeutic setting where plaintiff was either at his home or in the office accompanied by a parent. The ALJ failed to consider the context and setting in evaluating Tausch's opinion. Moreover, the ALJ relied too heavily on these relatively benign findings, while disregarding Tausch's notes as to plaintiff's overall mood and affect. The ALJ noted that records from plaintiff's in-office visits "do not reflect observations [he] exhibited any increase in anxiety or behavioral observations related to anxiety." Tr. 25. This mischaracterizes the record, as plaintiff had only four in-office visits with Tausch, and he attended at least three of them with his mother. Tr. 417, 419, 421, 428; *see*, *supra*, n. 4.

Additionally, the ALJ noted that plaintiff reported improvement of his symptoms with medication adjustments. Tr. 25. But plaintiff's reports of improvement were infrequent, short-lived, and not completely effective. *See* Tr. 419 (describing continued struggle with anxiety and that medication helps "some"); Tr. 422 (did not tolerate Adderall, started Vraylar); Tr. 426

13 – OPINION AND ORDER

(restarted on Adderall and also Propranolol); Tr. 429 (started venlafaxine); Tr. 436 (stopped venlafaxine); Tr. 459 (started gabapentin); *see also Garrison*, 759 F.3d at 1017 ("[I]t is error for an ALJ to pick out a few isolated instances of improvement . . . and to treat them as a basis for concluding a claimant is capable of working"). Finally, the ALJ stated that Tausch's notes "do not reflect plaintiff's work activity in February, March, and April 2022." Tr. 25. However, on April 25, 2022, Tausch noted that, "since his last visit on" April 11, 2022, plaintiff "lost another job due to his anxiety levels, difficulty leaving his home, and ongoing debilitating feelings of panic." Tr. 425. This indicates that Tausch was aware of that plaintiff had recently obtained employment but had difficulty maintaining it. For these reasons, the ALJ erred in assessing Tausch's opinion.

### III.   Lay Witness

Plaintiff argues the ALJ erred in failing to provide germane reasons for discounting the lay witness testimony of his mother. Although the Ninth Circuit has not decided this issue, district courts in this circuit have concluded that the new regulations have not eliminated the requirement that ALJs must consider and address lay witness testimony. *See Karen W. v. Comm'r Soc. Sec. Admin.*, 2025 WL 654113, at *8 (D. Or. Feb. 28, 2025) (citing cases).

The ALJ noted that plaintiff "reported fewer functional limitations" than his mother and "while her observations of the claimant have been considered in conjunction with the overall record, . . . the objective evidence supports a finding the claimant is more functionally capable than she reported." Tr. 28. However, as discussed above, the ALJ erred in relying on a conflict with objective evidence to discount plaintiff's subjective symptom testimony. Based on this analysis, the ALJ failed to provide a germane reason for rejecting plaintiff's mother's testimony as well.

14 – OPINION AND ORDER

IV.     **Credit-As-True Analysis**

Plaintiff urges the court to credit the evidence as true and remand for the immediate payment of benefits. When the Commissioner has erred in making a decision to deny benefits, the court has discretion to remand the matter for further proceedings or the immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion."). The court may remand for the immediate award of benefits if certain prerequisites are met. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), *as amended* (Feb. 5, 2016). The court "must . . . review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (simplified) (citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593.

If the court determines the record "has been fully developed . . . and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (simplified) (quoting *Garrison,* 759 F.3d at 1020). The court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. The court will "generally remand for an award of benefits only in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (simplified).

Remand for further proceedings is the most appropriate course of action in this case. While the first prong of the credit-as-true analysis has been met, there remain ambiguities and inconsistencies in the record that call into question whether plaintiff is disabled. For example,

15 – OPINION AND ORDER

there are large and unexplained gaps in plaintiff's treatment record. Plaintiff alleges disability as of August 16, 2012, but provides no medical evidence until November 2017. *See* Tr. 370 (first medical record dated November 2, 2017). Moreover, there are significant gaps in the record where plaintiff received no treatment. *See, e.g.*, Tr. 388-92, 411 (three-year gap in mental health treatment); Tr. 490, 621 (six-month gap in mental health treatment). The ALJ noted the gaps in treatment but failed to inquire as to whether plaintiff had any explanation for these gaps. Thus, the Commissioner's decision is reversed, and this case is remanded for further proceedings so the ALJ can adequately evaluate plaintiff's symptom testimony, Tausch's medical opinion, and the lay witness testimony.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED: December 29, 2025.

                                                      /s/ Youlee Yim You
                                                 Youlee Yim You
                                                 United States Magistrate Judge